# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RAYMOND A. McNEAL, )
)
    Plaintiff, )
)
v. ) Case No: 03 C 2852
)
MICHAEL J. SHEAHAN, *et al.* )
)
    Defendants. )

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Raymond McNeal ("McNeal"), currently an inmate at Lawrence Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants failed to protect him from an assault at the hands of another inmate when he was detained at the Cook County Department of Corrections ("CCDOC"). Defendants Sheriff Michael Sheahan, Ernesto Velasco, Supt. Benn, Supt. Allen, Lt. Ventura, Sgt. Murphy, and Officer Nieto ("Defendants") have filed a motion for summary judgment to which McNeal has responded. For the following reasons, the court grants Defendants' motion for summary judgment.

### I. Standard of Review

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Lewis v. Holsum of Ft. Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) ("If the nonmoving party fails to make a sufficient showing on an essential element of her case, the

moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In order to present a genuine issue of material fact, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (*citing First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Id.* at 324. Moreover, a party may not attempt to survive a motion for summary judgment through the submission of an affidavit that contradicts testimony in his deposition or other sworn testimony. *Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 638 (7th Cir. 2004); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001).

## II. Facts

The following facts are drawn from Defendants' 56.1 Statement of Uncontested Material Facts. The court has incorporated McNeal's statement of disputed facts following each specific fact with which he disagrees.

On February 23, 2002, McNeal was a pre-trial detainee within Division VIII of the CCDOC. Division VIII has a residential treatment unit that provides housing for those detainees who have medical or psychological conditions. McNeal has a history of blood clots for which he takes Coumadin, a blood thinner. (McNeal deposition, pg. 9.) McNeal also had a history of psychological disorders and was first introduced to psychotropic medication through the Veteran's Administration. (McNeal deposition, pg. 15.)

Defendant Sheriff Michael Sheahan ("Sheahan") was the Sheriff of Cook County, Illinois. Defendant Ernesto Velasco ("Velasco") was the Executive Director of the Cook County Department of Corrections. However, Defendant Velasco is no longer employed by the Cook County Sheriff as he is retired. Defendant Superintendent Allen ("Allen") was the Superintendent of Division VIII of the CCDOC. Defendant Superintendent Benn ("Benn") was the Superintendent of Division VIII until the date of her retirement, December 31, 2001. She was no longer employed by the Cook County Sheriff on February 23, 2002. Defendant Lieutenant Ventura ("Ventura") was employed by the Cook County Sheriff. Defendant Sergeant Murphy ("Murphy") was employed by the Cook County Sheriff. Defendant Officer Nieto ("Nieto") was employed by the Cook County Sheriff as a correctional officer.

Detainees had the opportunity to use the recreation room one or two times per week under supervision. (McNeal deposition, at 23.) When this incident took place, Officer Nieto was the only officer assigned to supervise McNeal and the other detainees within his dorm. (McNeal deposition, pg. 25.)

After their recreation period ended, the detainees were ordered to line up for escort back to their dorm. Before lining up, McNeal tried to get in a couple of last shots during his game of pool.

(McNeal deposition, pg. 56.) McNeal turned in line with everybody else and heard "McNeal watch out!" (McNeal deposition, pg. 58.) McNeal then felt a blow to his head. A half second took place between hearing that warning and being struck in the head. (McNeal deposition, pg. 59.)

McNeal disagrees with this statement and states that his deposition reads: "and I turned to get in line with everyone else." (Tab 1, pg. 58, lines 5-6).

McNeal further stated, "Once I had put the pool stick down, I started walking to line up with everyone else." (Tab 1, pg. 58, lines 22-23).

McNeal was attacked by another detainee named Donelle Baker.[1] McNeal was able to subdue Baker and released Baker into Officer Nieto's custody. (McNeal deposition, pg. 63.)

McNeal and Donelle Baker had never been involved in a physical altercation prior to this incident, nor had Baker made any threats toward McNeal. (McNeal deposition, pg. 51.)

McNeal disagrees with this statement and states that his deposition reads: "Baker had made general threats to certain individuals in the dorm, okay, of which McNeal may or may not have been one of the parties." (Tab 1, pg. 52, lines 5-7).

McNeal further disagrees, stating: "He (Baker) made verbal threats and he made a physical action toward me." (Tab 1, pg. 52, lines 17-19).

> Q. "Like an aggressive stance so to speak?"
>
> A. "No, he actually took a swing at me as he was displeased." (Tab 1, pg. 52, lines 20-21).

---

[1] Baker's first name has been spelled both "Donelle" and "Donnell." On his affidavit, he signed his name "Donelle." The court will therefore use that spelling.

4

Prior to this incident, McNeal had never observed himself or other detainees to not be under supervision. (McNeal deposition, pg. 88.)

McNeal disagrees stating that in his deposition he stated: "he and other detainees were not supervised during recreation period, February 23, 2002." (Tab 1, pgs. 47, 48, 54, 62, 63). McNeal further stated "on occasion, for reasons, we as inmates/detainees were left unsupervised under different circumstances. These circumstances included changing of officers from lunch to where as one officer was asked to account for two dorms; officers leaving areas during recreation periods for whatever reason, I have no idea, but being gone for periods of time that would allow for anything to occur or jeopardize the welfare of inmates/detainees." (Tab 1, pgs. 89, 90).

McNeal states that earlier in the recreation period he had had an altercation with Baker. There was no officer there to supervise. (Tab 1, pgs. 52, 53, 54). That McNeal had to subdue Baker in a "bear-hug" to protect himself, which also substantiates the claim of no supervision (Tab 1, pg. 54, lines 2-8).

In his signed and sworn affidavit, detainee Donelle Baker, swears that after recreation hour was finished, Officer Nieto ordered all the detainees to line up for escort back to their dorm. It was at that time that Baker made a split decision to strike McNeal in the back of his head with a pool ball. Several detainees broke up the ensuing fight as well as Officer Nieto who was approximately 20 feet away from the fight. There were no other officers present who could have prevented this fight from occurring. (*See* Baker affidavit, attached hereto at Tab 2.)

McNeal disagrees with the statements in Baker's affidavit, stating that in his deposition he stated: "Someone from the hallway made a statement for B-Dorm to line up. It was – that statement was echoed by a few of the inmates that were in the room itself." (Tab 1, pg. 56, lines 9-13).

5

McNeal further stated, "this was not a split second decision but a premeditated action stemming from an altercation earlier in the recreation period." (Tab 1, pg. 50, lines 1-2); (Tab 1, pg. 50, lines 8-11); (Tab 1, pg. 52, lines 13-24); (Tab 1, pg. 53, lines 1-24); (Tab 1, pg. 54, lines 1-8).

McNeal further stated in his deposition: "And I turned around and saw Mr. Baker with the barrel weight in his hand." (Tab 1, pg. 61, lines 1-2). "It was a 7.7 kg. I guess it about pretty close to a 10 lbs." (Tab 1, pg. 61, lines 6-7). "I immediately rushed him and got the type of position whereas I could control the weight itself and subdue him at the same time." (Tab 1, pg. 61, lines 16-19).

In his signed and sworn affidavit, detainee Maurice Jones swears that he was present to witness inmate Baker grab a pool ball from the pool table and strike McNeal in the head. He further swore that the fight occurred very suddenly and without notice to anyone. Officer Nieto was the only officer present at the time and did not have a chance to intervene to prevent this attack from occurring. (*See* Jones affidavit, attached hereto at Tab 3.)

McNeal agrees in part and disagrees in part with Jones's affidavit. McNeal states that witness Maurice Jones may or may not have been in recreation room. McNeal argues that it is clear that the mirrored responses in ¶ 4 in both Baker and Jones's affidavits that they was being lead by outside force or motive.

In his signed and sworn affidavit, Officer Nieto swears that he was assigned to monitor those detainees of dorm B-2 of the Division VIII Residential Treatment Unit during their recreation hour. As the detainees were walking out of the recreation room back to their dorm, Baker struck McNeal in the back of his head with an object that was later determined to be a pool ball. Officer Nieto had no reason to anticipate that this attack would occur, as Baker and McNeal had had no prior

altercations. Officer Nieto was the only officer assigned to supervise the detainees, including McNeal, and he was present throughout the entire recreation hour. (*See* Nieto affidavit, attached hereto at Tab 4.)

McNeal disagrees with Nieto's affidavit and claims that there are or were no cameras to monitor detainees of B-2 Dorm in the recreation room as Officer Nieto suggests. Therefore, the only other way they could be supervised is visually. However, McNeal has stated and sworn in his original detainee grievance, March 2, 2002, and in his deposition that "there was no supervision of detainees during the recreation period on the date of February 23, 2002." (Tab 1, pgs. 47, 48, 54, 62).

McNeal further states that the weapon used to attack him, a free weight plate (5-10 lbs. or 7.7 kg.), was never taken into custody as evidence by an officer, which is a failure of standard operating procedures.

McNeal adds that Officer Nieto's Incident Report is a pre-fabrication that has been allowed to fester into the cornerstone of the Defendants' house of straw. McNeal stated in his deposition:

Q. Does this incident report fairly reflect what took place?

A. "Not even close." (Tab 1, pg. 65, lines 3-5); (Tab 1, pg. 65, line 15).

In her signed and sworn affidavit, Superintendent Allen swears that at the time of this incident, she was the Superintendent of Division VIII. She assumed the position from Superintendent Benn, who retired on December 30, 2001. She states that there were never any free weights available for use by the detainees in Division VIII. She learned that McNeal was hit in the head by Donelle Baker with a pool ball. In her tenure as Chief and Superintendent of Division VIII,

other than this isolated incident, there has never been an attack of this nature during recreation hour. (*See* Allen affidavit, attached hereto at Tab 5.)

McNeal agrees in part and disagrees in part with Allen's affidavit. McNeal states that at no time did he indicate or state "that free weights were available for use by pre-trial detainees."

In his signed and sworn affidavit, Lieutenant Ventura states that he was not present to witness the incident between McNeal and Baker. He states that there were no free weights in the recreation room at any time. (*See* Ventura affidavit, attached hereto as Tab 6.)

McNeal disagrees with Ventura's affidavit, stating that his original detainee grievance, complaint, amended complaint, sworn deposition, and affidavit of existence and presence all attest to the presence of free weights.

In his signed and sworn affidavit, Sergeant Murphy states that he was not present to witness the incident between McNeal and Baker. He states that there were no free weights in the recreation room at any time. (*See* Murphy affidavit, attached hereto at Tab 7.)

McNeal disagrees with Murphy's affidavit, stating that his original detainee grievance, complaint, amended complaint, sworn deposition, and affidavit of existence and presence all attest to the presence of free weights.

In her signed and sworn affidavit, former Superintendent Benn states that she was no longer employed by the Sheriff when this incident occurred. She also states that prior to her date of retirement (December 30, 2001), there were no free weights in the recreation room but rather a universal machine with weights firmly attached to it. She states that there has never been an incident where a detainee attacked another with a pool ball or other object during recreation hour. (*See* Benn affidavit, attached hereto at Tab 9.)

8

McNeal disagrees with Benn's affidavit, stating that his original detainee grievance, complaint, amended complaint, sworn deposition, and affidavit of existence and presence all attest to the presence of free weights.

McNeal filed his amended complaint on August 14, 2003. (*See* Amended Complaint, attached hereto as Tab 9.)

### III. Analysis

Because McNeal was a pretrial detainee at the time of the events in question, "his § 1983 claim is analyzed under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause." *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). However, that distinction is without a difference in a claim such as this because "§ 1983 claims brought under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test." *Henderson v. Sheahan*, 196 F.3d 839, 844 n. 2 (7th Cir. 1999); *see also Butera*, 285 F.3d at 605 n. 2.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Lewis v. Richards*, 107 F.3d 549, 552-53 (7th Cir. 1997), quoting *Farmer v. Brennan*, 511 U.S. 825, 831-33 (1994); *Langston v. Peters*, 100 F.3d 1235, 1237 (7th Cir. 1996). Failure to provide such protection, however, violates the Eighth Amendment's prohibition of cruel and unusual punishment only if "deliberate indifference by prison officials [to the prisoner's welfare] effectively condones the attack by allowing it to happen[.]" *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). Thus, in order to sustain an Eighth Amendment claim, an inmate must demonstrate that the defendants had "actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it."

9

*McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991). It is not enough that a reasonable jail official would or should have known that the prisoner was at risk: the official must actually know of and disregard the risk to incur culpability. *Farmer*, 511 U.S. at 837-38.

In the instant case, the parties agree that McNeal was attacked by another inmate and suffered injuries. In a failure-to-protect case such as this, the plaintiff must introduce evidence tending to show that jail official(s) were aware of a specific, impending, and substantial threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Mere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

Although McNeal makes several arguments that his being attacked by Baker was because of the deliberate indifference of Defendants, the court finds that he has not introduced any evidence tending to show that Officer Nieto or any other officer was aware of a specific, impending, and substantial thereat to his safety.

First, McNeal argues that Baker hit him with a free weight and not a pool ball and that the disagreement between him and Defendants as to whether he was hit with a pool ball or a free weight constitutes an issue of material fact. The court does not perceive the identity of the object with which McNeal was hit to be a material fact. Using either a pool ball or a free weight as a weapon is not the use for which these objects were intended, and no one disagrees that McNeal was hit with some object. A free weight would presumably be a heavier object than a pool ball but, once again, no one disagrees that McNeal was injured in the attack. McNeal argues that the free weights were readily accessible, but so were the pool balls.

McNeal argues that Defendants should have foreseen that free weights could be used as weapons. Perusing only a few cases in which one inmate attacks another reveals that many inmates

10

are creative in using almost any object as a weapon. *See, e.g., Pierson v. Hartley*, 391 F.3d 898 (7th Cir. 2004) (brass locks stuffed in a sock); *Case v. Ahitow*, 301 F.3d 605 (7th Cir. 2002) (broom head); *Peate v. McCann*, 294 F.3d 879 (7th Cir. 2002) (laundry bag loaded with rocks, dirt, bricks, and cement). Defendants have attested that there were no free weights in the recreation room, and even more important that they are not aware of any incidents in which a free weight was used to attack another inmate. Even assuming, McNeal was hit with a free weight, he has come forward with no evidence to demonstrate that Defendants were aware that Baker, or any other inmate, planned to use a free weight as a weapon.

Second, McNeal argues that Defendants placed him in a dangerous situation because they knew that the detainees in Division 8 were all on some kind of medical or psychotropic medication and could change their mind or attitude at any time. (Interestingly enough, McNeal includes himself in this statement, which makes the court wonder if he thinks defendants should have considered him a danger to other detainees.)

In *Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001), the Court of Appeals explained how specific the knowledge of a risk must be in order to constitute deliberate indifference under the *Farmer* standard. An official cannot escape liability by showing that he did not know that a plaintiff was likely to be assaulted by a specific inmate if the risk to the plaintiff was obvious. The Supreme Court gave as an example in *Farmer* that if rape were so common that potential victims dared not sleep, it would be irrelevant if officials could not guess beforehand who the attacker might be. In the instant case, knowing that inmates are on medication is hardly the same type of risk as knowing that rape frequently occurs in a particular institution. In fact, following McNeal's argument to its logical conclusion, then all inmates who are on medication would need to be kept under 24-hour-a-

11

day lockdown because they could be a potential danger to another inmate. McNeal also has not come forward with any evidence that free weights or pool balls had been used in other inmate-on-inmate attacks thus giving warning to Defendants that these recreational items were potential weapons.

The Supreme Court emphasized in *Farmer*, 511 U.S. at 842-43, quoting from the Brief for Respondents, that:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." Brief for Respondents 22.

McNeal has not come forward with any evidence demonstrating that inmates who were on medication or who had access to recreational items such as pool balls or free weights posed a risk to other inmates that was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, . . ."

Third, McNeal argues that Officer Nieto was not present during the entire recreation period, in particular, at the time Baker attacked him. In the affidavits of Baker, Jones, and Officer Nieto, they attest that Officer Nieto was present and supervising the recreation period and that it was Officer Nieto who gave the order for the detainees to line up. McNeal disagrees that it was Officer Nieto who gave the order and points to his deposition where he stated that someone in the hallway gave the order to line up and that the order was echoed by some of the inmates in the room itself. However, someone in authority gave the inmates an order to line up, and McNeal admits in his deposition at pg. 56 that he assumed an officer gave the order and that it was not an inmate. Even

if Officer Nieto or some unidentified officer gave this order from the hallway and was not in the recreation room at the precise moment that McNeal was attacked, he still had to be close enough to be heard.

Fourth, the biggest obstacle to McNeal's claim of deliberate indifference is the lack of any notice to Officer Nieto or any other official that McNeal feared an attack from Baker or any other inmate. McNeal's assertion in his deposition at pg. 52 that Baker had made general threats of which McNeal may or may not have been one of the parties is hardly enough to put Officer Nieto or any other officer on notice that McNeal feared an attack from Baker.

The court accordingly finds that neither Officer Nieto nor any other official was deliberately indifferent in regard to Baker's attack on McNeal.

McNeal attempts to hold the supervisory personnel liable, arguing that they failed to implement or enforce recreational equipment policies. This is essentially an official capacity claim, which is a claim against the governmental entity that employs the defendant. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). A local governmental entity is liable for damages only if a plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

The Seventh Circuit has determined that a municipality can be said to have violated the rights of a person because of its policy when a widespread practice, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law." *Baxter by Baxter v. Vigo County School Corp.*, 26F.3d 728, 735 (7th Cir. 1994).

However, as discussed earlier, McNeal has come forward with no evidence demonstrating that Defendants had a practice of allowing free weights to be accessible to inmates who might use them to assault other inmates.

## IV. Conclusion

For the foregoing reasons, the court grants defendants Sheriff Michael Sheahan, Ernesto Velasco, Supt. Benn, Supt. Allen, Lt. Ventura, Sgt. Murphy, and Officer Nieto's motion for summary judgment in its entirety. The Clerk is directed to enter judgment in favor of defendants Sheriff Michael Sheahan, Ernesto Velasco, Supt. Benn, Supt. Allen, Lt. Ventura, Sgt. Murphy, and Officer Nieto and against plaintiff Raymond A. McNeal pursuant to Fed. R. Civ. P. 56.

IT IS SO ORDERED.

ENTER:

*Elaine E. Bucklo*

ELAINE E. BUCKLO, Judge
United States District Court

DATED: 1/31/05